IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUSTIN BOND, as Personal Representative of the Estate of BRAD LANE, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. CIV-23-05-D<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is Defendant Melissa Wood's (Officer Wood) Special Appearance and Motion to Dismiss [Doc. No. 19]. Plaintiff filed a Response [Doc. No. 23], and the matter is at issue.

## BACKGROUND

Brad Lane was beaten to death by his cellmate while housed at the Oklahoma County Detention Center as a pretrial detainee. The beating lasted approximately forty minutes. Compl. [Doc. No. 1] ¶ 40. Although Mr. Lane repeatedly screamed for help, there were no detention officers on the floor to come to his aid. *Id.* at ¶¶ 13-21.

Officer Wood was the corrections officer assigned to Mr. Lane's floor the evening of his death. *Id.* at ¶ 27. Officer Wood failed to conduct her required hourly sight check between 6 and 7 p.m., reportedly because she was escorting another inmate to the medical facility. *Id.* Officer Wood returned to Mr. Lane's floor, and a medical emergency was called in at 7:10 p.m. *Id.* at ¶¶ 21, 22. Mr. Lane was subsequently pronounced dead. *Id.* at ¶ 24.

The Complaint, brought by Mr. Lane's estate, maintains that Officer Wood failed to protect Mr. Lane by leaving the jail floor unsupervised for an extended period, knowing that Mr. Lane was housed with a violent offender. *Id.* at ¶ 31. Plaintiff attributes Officer Wood's conduct to a long-standing custom of understaffing and inadequately supervising the jail. *Id.* at ¶ 28. In addition to his claims against Defendants Oklahoma County Criminal Justice Authority (OCCJA) and the Oklahoma County Board of County Commissioners, Plaintiff alleges that Officer Wood is personally liable for violating Mr. Lane's constitutional rights under 42 U.S.C. § 1983.

## STANDARD OF DECISION

A complaint may be dismissed upon a motion for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P. 8(a)(2), a complaint must contain "a short and plain statement… showing that the pleader is entitled to relief." The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In

2

determining whether Plaintiff has stated a plausible claim against Officer Wood, the Court ignores "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," neither of which are entitled to a presumption of truth. *Twombly*, 550 U.S. at 555.

## DISCUSSION

The Complaint asserts a single claim against Officer Wood for failing to protect Mr. Lane from harm by leaving his floor unsupervised for an extended period of time, during which time Mr. Lane was brutally attacked by his cellmate. Officer Wood seeks dismissal for failure to state a claim and on the basis of qualified immunity.

### I.   Failure to State a Claim

#### a.   Failure to Protect

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[1] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment "imposes duties on these officials, who must provide humane conditions of confinement[,] … ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates'…." *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation and citation omitted). "Being violently

---

[1] As a pretrial detainee, Mr. Lane's constitutional rights were protected under the Due Process Clause of the Fourteenth Amendment. *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 925 (10th Cir. 2020) (unpublished). In evaluating this claim, "an analysis identical to that applied in Eighth Amendment cases" is applied. *Id.* (quotation omitted).

3

assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citation omitted).

However, not every injury suffered by a prisoner at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Rather, a prison official violates the Eighth Amendment only when 1) the deprivation alleged is, objectively, "sufficiently serious"; and 2) the prison official has a "sufficiently culpable mind." *Id.* For a claim based on failure to prevent harm, the first requirement is satisfied when an inmate shows that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). For the question of culpability, "the state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

    i. **Sufficiently Serious**

In denying OCCJA's motion to dismiss [Doc. No. 10], this Court previously found that Plaintiff's Complaint sufficiently alleged that Mr. Lane was incarcerated under conditions posing a substantial risk of serious harm. Accordingly, the Court's present analysis will center on whether Officer Wood acted with "deliberate indifference" to Mr. Lane's health or safety.

    ii. **Deliberate Indifference**

A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Deliberate indifference means that the prison official "must both be aware of facts from which the inference could be drawn that

4

a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "It is not enough to establish that the official should have known of the risk of harm." *Id.* "Deliberate indifference requires more than a showing of simple, or even heightened, negligence." *Jones v. Bernard*, 77 F. App'x 467, 470 (10th Cir. 2003) (unpublished) (citing *Farmer*, 511 U.S. at 836-37). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Under this standard, Plaintiff has failed to state a plausible claim of relief against Officer Wood. Specific to Officer Wood, Plaintiff alleges that: Officer Wood failed to conduct her required sight check between 6 and 7 p.m., allegedly because she was escorting another inmate to the medical clinic (Compl. at ¶ 27); Officer Wood was not on the floor to respond to Mr. Lane's calls for help (Compl. at ¶ 19); and Officer Wood came to the floor after Mr. Lane had been beaten for approximately forty minutes and called in a medical emergency at 7:10 p.m. (Compl. at ¶ 21).

Officer Wood's failure to perform her hourly sight check between 6 and 7 p.m., while potentially negligent, does not constitute deliberate indifference. *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) ("The failure to conduct the cell checks and head counts is negligence of the purest form; it is of no value in answering the key question here – namely, whether [the detention officers] *knew* of a substantial risk of serious harm to [the inmate]."). From Plaintiff's Complaint, it appears that Officer Wood did not conduct her sight check until, at the latest, 7:10 p.m., when the medical emergency was called in. Compl. at ¶ 22. As the only officer assigned to Mr. Lane's floor, Officer

5

Wood stated that she did not conduct her sight check on time because she was escorting another inmate to the medical clinic. Compl. at ¶ 27. Taken as true, these allegations do not sufficiently allege deliberate indifference by Officer Wood.[2] *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1581-82 (11th Cir. 1995) (finding on summary judgment that jailer did not act with deliberate indifference when he, as the sole jailer on duty, left the inmate in a "bull-pen" with several other inmates, to include one being held for murder, and did not check on the inmates after 9:30 p.m. when his shift ended at midnight); *see also Heidel v. Mazzola*, 851 F. App'x 837, 841 (10th Cir. 2021) (unpublished) (finding no deliberate indifference for an officer's failure to conduct hourly cell check "when considering the lack of evidence regarding the officers' subjective awareness" of the risk of suicide).

      Plaintiff has failed to sufficiently allege that Officer Wood knew that Mr. Lane faced a "substantial risk of serious harm" if she failed to conduct her hourly sight check. Plaintiff vaguely alleges that Officer Wood had "knowledge that [Mr.] Lane was housed with a known violent offender" (Compl. at ¶ 31), but the Court disregards this allegation as conclusory. Plaintiff does not plead facts which would support a finding that Officer Wood knew that Mr. Lane's cellmate had been charged with violent crimes such as assault and battery or, more importantly, that the cellmate's general criminal history rendered him a

---

[2] Plaintiff's Complaint attributes Officer Wood's lack of supervision to the custom of understaffing and overcrowding the jail. Compl. at ¶ 28 ("The 13th floor was left without any supervising officer on the evening of January 2 due to the long-standing custom and practice of understaffing and overcrowding at the Jail."). Although Plaintiff's Complaint sufficiently pled a failure-to-protect claim against OCCJA by "alleg[ing] that the lack of supervision was the result of a long-standing custom at the jail – one which the OCCJA knew about and failed to remedy," the same allegations do not render it plausible that Officer Wood acted with deliberate indifference.

6

substantial danger to Mr. Lane.³ This is especially true in a jail setting, as prisons and jails are both "places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson*, 468 U.S. at 526. Based on Plaintiff's allegations, it is "conceivable," not "plausible," that Officer Wood actually "dr[e]w the inference" that failing to conduct her hourly sight check on time posed a "substantial risk of serious harm" to Mr. Lane. *Twombly*, 550 U.S. at 570; *Farmer*, 511 U.S. at 837.

Plaintiff's Complaint similarly fails to allege that Officer Wood "knew of a substantial risk from the very fact that the risk was obvious." *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 842). Inmates will always pose some level of risk to each other. Contrary to Plaintiff's assertion, Plaintiff's allegations are not similar to those in *Pendleton v. Bd. of Cty. Comm'rs for Okla. Cty.*, where the inmate's estate alleged that the inmate was locked inside a converted basketball court used as a holding pen for inmates facing disciplinary sanctions and "awaiting disciplinary hearings *for attacking other inmates*"; the holding pen was "not supervised by any jail staff"; and the inmates were "left unrestrained to freely roam about without restriction or oversight." 2019 WL 4752269, at * 1 (W.D. Okla. Sept. 30, 2019). Additionally, the claims in *Pendleton* were brought against the Board of County Commissioners for Oklahoma County, the County Commissioners, and the Sheriff and were premised on those defendants' "'actual notice' that inadequate staffing and monitoring at the OCDC were

---

³ Nor does Plaintiff allege that Officer Wood was responsible for cell assignments or for classifying inmates for cell assignments.

'likely to result in inmate-on-inmate violence'" and the defendants' failure to remedy said conditions. *Id.* Here, Plaintiff has failed to allege that Mr. Lane's cellmate's pre-detention history of assault and battery made it plausible that Officer Wood knew of a substantial or obvious risk to Mr. Lane.

Plaintiff alleges that "around 40 minutes after [] Mr. Lane began screaming, Officer Wood came to the pod on the 13th floor." Compl. at ¶ 21. Notwithstanding the horrifying nature of Mr. Lane's death, Plaintiff does not allege that Officer Wood heard Mr. Lane's screams and failed to respond reasonably. *See Glover v. Gartman*, 899 F.Supp.2d 1115, 1150 (D.N.M. Sept. 27, 2012) ("Nowhere in the Complaint, however, does [the plaintiff] allege that [the corrections officer] was aware of [the inmate's] pleas or that [the officer] knew that [the inmate] 'tried to communicate an emergency situation to the [LCDC] Officers by pushing the emergency buttons for help, thus "pleading" for help.'"). Although Officer Wood's failure to be in a position to hear Mr. Lane's calls for help may constitute negligence, Plaintiff is required to allege more than negligence to properly state a claim under § 1983.

Plaintiff also alleges that "[d]etention officers on the scene" would not allow nurses access to Mr. Lane because his cellmate was acting out and that "[t]hese officers" instead opened the cell door and deployed pepper spray. Compl. at ¶ 23. However, because Plaintiff does not allege that *Officer Wood* did anything to prevent nurses from attending to Mr. Lane, the Court does not address Plaintiff's allegation that unnamed officers acted with deliberate indifference to Mr. Lane's serious medical need. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term

8

'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

As alleged in Plaintiff's Complaint, Officer Wood's failure to conduct her required sight check was due to the long-standing custom of understaffing and overcrowding at the jail. Compl. at ¶ 28. Plaintiff's Complaint does not allege any facts that cast doubt on Officer Wood's explanation for failing to conduct her required sight check, nor does Plaintiff suggest that Officer Wood should not have taken the other inmate to the medical clinic. Although Plaintiff's claims premised on understaffing and overcrowding the jail survived dismissal, Plaintiff has not "nudged [her] claim[] across the line from conceivable to plausible" that Officer Wood acted with deliberate indifference to Mr. Lane's health or safety. *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's claim against Officer Wood must be dismissed.

## II. Qualified Immunity

Officer Wood asserts she is entitled to qualified immunity as to Plaintiff's failure-to-protect claim. "Qualified immunity is immunity from suit, rather than a mere defense to liability." *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[W]hen a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotation marks omitted). Courts "may decide which

9

of these two prongs to address first, and need not address both." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017). Because qualified immunity is more than a defense to liability, the Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Robbins*, 519 F.3d at 1249 (citation omitted) ("The *Twombly* standard may have greater bite in [§ 1983 cases], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'"). "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010).

For the reasons set forth herein, Plaintiff has failed to allege facts showing that Officer Wood's conduct violated a constitutional or statutory right. Because Plaintiff has not met the first portion of the two-pronged test, the Court finds that Officer Wood is entitled to qualified immunity. *See Turner*, 804 F. App'x at 926 (granting qualified immunity where the plaintiff failed to allege sufficient facts showing the defendant acted with deliberate indifference, thus failing to state a claim for a constitutional violation as required under the first prong); *see also Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003) (granting qualified immunity because the plaintiff could not establish a violation of a constitutional right where the defendants did not act with deliberate indifference).

**III.     Leave to Amend**

The Court finds that Plaintiff's claim against Officer Wood should be dismissed. The Court further finds that Plaintiff need not be granted leave to amend his pleading at this time.[4]

### CONCLUSION

For the reasons discussed herein, Defendant Melissa Wood's Special Appearance and Motion to Dismiss [Doc. No. 19] is **GRANTED**.

**IT IS THEREFORE ORDERED** that Plaintiff's claim against Defendant Melissa Wood is dismissed without prejudice.

**IT IS SO ORDERED** this 11th day of July, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment"). In this case, the scheduling order to be entered pursuant to FED. R. CIV. P. 16(b)(1) will establish a deadline for motions to amend pleadings.